IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| NATHANIEL HESSON and PEYTON HESSON, Minors, b/n/f and parents, Samantha Hesson and William Hesson, SAMANTHA HESSON, WILLIAM HESSON, and WANDA HUMMEL-HESSON,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT CENTRAL OF TENNESSEE, INC., d/b/a CREDIT CENTRAL,<br><br>Defendant. | Case No. _____<br><br>(JURY DEMAND) |

## COMPLAINT

COME NOW the plaintiffs, and for their claims and causes of action against the named defendant would state:

## II.
### Introduction, Jurisdiction & Venue

1. The plaintiffs are asserting various claims and violations of Tennessee statutory and common law, including lost consortium claims, against the defendants, arising out of the facts, circumstances and events set out hereinafter. Each of the named plaintiffs in this case are also asserting a violation by the defendant of their rights protected under the Fair Debt Collection Practices Act, *15 U.S.C. § 1692.* (the "FDCPA").

2. The plaintiffs Wanda Hummel-Hesson ("Hummel-Hesson"), Samantha Hesson and William Hesson (the "Hessons") are each adult citizens and residents of Overton County, Tennessee. The plaintiffs Nxxx Hesson, born in 2006, and Pxxx Hesson, born in 2007 (the "Minor Plaintiffs"), are each minor citizens and residents of Overton County, Tennessee, whose claims are being brought on their behalf by their parents and next friends, Samantha Hesson and William Hesson. The plaintiffs

1

may be collectively referred to hereafter, where appropriate, as the "Plaintiffs" or in appropriate cases will be individually distinguished. All of the plaintiffs have, at all times relevant, resided in the same home located in Overton County, Tennessee.

3. Each of the named plaintiffs are considered "consumers", or are otherwise persons and parties protected by FDCPA, with standing to sue for violations thereof under the provisions of the Act.

4. The defendant Credit Central of Tennessee, Inc. d/b/a Credit Central ("Defendant" or "Credit Central"), a financing company commonly referred to as a payday lender, is a South Carolina corporation registered and authorized to do business in the State of Tennessee, whose registered agent for service of process is CT Corporation System, Ste. 2021, 800 So. Gay Street, Knoxville, Tennessee 37929-9710. The principal office and business address of Credit Central in Tennessee as respects the facts, circumstances and events of this lawsuit is the Putnam County, Tennessee, office located at 626 So. Willow Avenue, Cookeville, Putnam County, Tennessee 38501.

5. At all times relevant to this complaint Credit Central acted as a "creditor" and/or as a "debt collector" with respect to debt owed by one or more of the plaintiffs, all within the definition, scope and meaning of the FDCPA.

6. All or a substantial portion of the facts, circumstances and events giving rise to this cause of action occurred in Overton County, Tennessee.

7. The plaintiffs having asserted violations of the Fair Debt Collection Practices Act, jurisdiction for violations thereof may be pursued in either State or Federal Court. *15 U.S.C. § 1692.* Because violations of FRCPA have been asserted, a federal question has been raised under the laws of the United States and so jurisdiction is properly situated in the United States District Court. *15 U.S.C. § 1692k(d); 28 U.S.C. § 1331.* The United States District Court, in addition, has supplemental jurisdiction over all State law claims between the parties arising out of the same facts, circumstances

and events. *28 U.S.C. § 1367*. All or a substantial portion of the facts, circumstances and events complained of herein occurred in Overton County, Tennessee. Accordingly, by statute venue is properly situated in the Northeastern Division of the United States District Court, Middle District of Tennessee. *28 U.S.C. §1391 and 28 U.S.C. §123*.

## II.
## Facts & Claims

8. At all times relevant plaintiff Hummel-Hesson shared a home in Overton County, Tennessee, with her son plaintiff William Hesson, his wife, plaintiff Samantha Hesson, and their three minor children, including the two Minor Plaintiffs.

9. On or about July 9, 2011, Hummel-Hesson obtained a payday loan from Credit Central for $345.12, calling for monthly payments of principal together with interest calculated at an annual rate of 99.76% per year of $67.00 each, and secured or purported to be secured by certain of her personal property as collateral for repayment of that loan. Hummel-Hesson, aged fifty at the time of this loan, had suffered a stroke several years before, leaving her partially paralyzed on her right side. Her disability required her to wear a leg brace and to use a cane or walker, a fact that was known to Credit Central and to its employees including its store manager, Melanie Randolph ("Randolph").

10. The plaintiff William Hesson, a Marine and Afghanistan war veteran and the father of the Minor Plaintiffs, had also obtained a payday loan from Credit Central in 2011. The principal balance of this loan was less than $500.00. Credit Central maintained that his payday loan was secured, or purportedly secured, by certain of his personal property as collateral for repayment of that payday loan. William Hesson lost his full-time job soon after he had obtained this payday loan. He had difficulty finding other than part-time odd jobs, and as a result William Hesson fell behind on repayment of his debt owed to Credit Central. Although he fell behind on the loan repayment schedule, William Hesson attempted to make partial payments on this debt while seeking other employment. He

3

and his wife also talked with various Credit Central employees, including its manager Melanie Randolph, in efforts to defer their payment obligations for the payments that had been missed or partially paid, until William Hesson was able to find other full-time employment.

11. At all times relevant Melanie Randolph was the on-site manager of the Cookeville office of Credit Central, which is the office where the payday loans made to the plaintiffs originated. In her capacity as office manager, Randolph was charged with the day-to-day operation of the Cookeville office including the marketing, approval, monitoring and collection of loans, extensions, renewals, the evaluation of collateral, and with collateralization and repayment matters generally. In her role as office manager for Credit Central, Randolph was known to have an aggressive demeanor, and was known to bully, threaten, curse, and to verbally abuse and harass customers as well as store employees.

12. After dark, at approximately 6:20 p.m. on January 25, 2012, the plaintiffs William and Samantha Hesson were away from home attending a funeral. The plaintiff Hummel-Hesson was at their home, baby-sitting the three minor children of William and Samantha Hesson including the two Minor Plaintiffs. Hummel-Hesson heard a noise outside her home, and then heard someone shout to her in a threatening manner to open the door. Using her cane, she walked to the front door. She opened the inside door, but left the screen door closed. The plaintiff looked out the screen door, and saw Randolph and another Credit Central employee at her mailbox. When she saw the plaintiff at the door, Randolph immediately approached the door in a hostile and aggressive manner. In the presence of the Minor Plaintiffs, Randolph kicked or banged on the screen door, demanded to see William Hesson, and repeatedly cursed Hummel-Hesson. Randolph stated that she was there for Credit Central, to either collect a cash payment from William Hesson, or to come inside the house to, "assess his collateral".

13. The Minor Plaintiffs, who were observing Randolph's belligerence and hostility towards their grandmother, started screaming in fear because of the aggressive actions of Randolph. Randolph demanded to come into the house to "check the collateral" of William Hesson, grabbing the storm door

4

handle forcefully in attempts to enter the home. Hummel-Hesson pulled the door back, explaining to Randolph that her son was away at a funeral, that she was watching his three children, and that she couldn't come in. As Randolph started to walk away Hummel-Hesson opened the screen door slightly, and asked Randolph to return another day at a decent hour, when her son was home. At the same time, Hummel-Hesson placed her cane between her knees in an effort to try to get one of the screaming children to go into the bedroom. Rather than leaving, Randolph turned around and forcefully shoved the storm door into Hummel-Hesson's face while continuing to curse her in the presence of her three grandchildren. The plaintiff was knocked to the floor, causing her serious, painful and debilitating injuries. All of these outrageous and wrongful actions on the part of the defendant's employees directed towards plaintiff Hummel-Hesson, in their nature being negligent, reckless and/or intentional, occurred in plain sight and view of the Minor Plaintiffs, causing them serious, severe and continuing anguish, emotional distress and harm, and necessitating medical therapy, treatment and counseling. Seeing the plaintiff fall to the ground, Randolph and her co-worker then fled the scene, leaving the plaintiff wedged in the doorway surrounded by her screaming and panicked grandchildren.

14. In an effort to conceal their negligent, reckless and improper actions and to deflect the blame to the plaintiff for the injuries that she suffered, and compounding their misconduct and wrongdoing, as soon as the defendant's employees left the premises Randolph called the local area 911 by cellular telephone to give her side of the story. The defendant's employees falsely claimed that Hummel-Hesson had tried to hit Randolph with her cane and had threatened them with a gun. This telephone call was made at approximately the same time that Hummel-Hesson had contacted 911. As a result of the false statements given to police officers by Randolph, and even though Hummel-Hesson was seriously injured, she was forced to remain on the floor in the doorway in the presence of her young grandchildren until police officers had thoroughly searched the home for a handgun and had interviewed the Minor Plaintiffs. No handgun was found. After several minutes on the floor, the

5

plaintiff was finally permitted to receive medical treatment, at which point she was transported by ambulance to an area hospital for treatment of her back and other injuries.

15. Randolph was subsequently arrested for assault. On March 8, 2012, in an action styled *State of Tennessee v. Melanie Ruth Randolph, Overton County General Sessions No. 2012-CR-214*, Randolph was enjoined from coming on or about Hummel-Hesson and William Hesson for a period of twelve months. Upon information and belief the assault charges were dismissed, subject to Randolph's compliance with the restraining order.

### III.
### Claims & Theories

16. At all times relevant to this complaint Randolph, as an employee and the manager of Credit Central's Cookeville office, was acting incidental to and in the general course and scope of her employment duties, on the business of, in service to and for the benefit of her employer, and with actual and apparent authority. As such, Credit Central is vicariously liable under theories of principal – agent, respondeat superior and master and servant, for all of Randolph's negligent, reckless and intentional wrongful acts towards the plaintiffs.

17. At all times relevant a special relationship existed between the defendant and Randolph as its store manager, imposing a duty upon defendant to control the conduct of Randolph and those acting at her direction and control.

18. At all times relevant to this complaint Randolph was authorized, as the store manager, to act for and in the place of the defendant, in furtherance of her employer's business and with an intent to benefit her employer, all for her stated reasons of assessing the collateral of William Hesson.

19. All of the acts, errors and omissions of Randolph occurred while she and her co-worker were engaged in duties motivated by and for the benefit of the defendant as their employer and in furtherance of the defendant's business and which Randolph and her co-worker were knowingly

6

authorized to perform, including the check and assessment of collateral purportedly securing repayment of the payday loan to William Hesson. As such and at all times relevant, Randolph her co-worker were each the agent of the defendant and all acts, errors and omissions of Randolph and her co-worker, as agent, are considered to be the acts, errors, or omissions of the defendant as their principal.

20. The defendant, vicariously through Randolph and its other employees, owed a duty of reasonable care to its borrowers to avoid injury and harm and to otherwise act reasonably in the monitoring of loans and the checking of collateral. Randolph in her actions as described herein, and operating on the business of her employer, acted negligently, recklessly, maliciously and egregiously towards the plaintiff and the Minor Plaintiffs. The defendant is vicariously liable for the wrongful acts of Randolph, entitling the plaintiffs to an award of all allowable compensatory damages reasonably occasioned thereby, as well as an award of punitive damages to deter defendant, its employees and others from committing similar wrongs in the future.

21. In her acts described herein while operating on the business of her employer, Randolph gave an unmistakable appearance of the intent and ability to do harm to the plaintiff and/or the intent to push the storm door into the plaintiff, with reasonably foreseeable harm resulting to all of the plaintiffs including the minor children observing her aggressive and hostile actions. As such, the defendant is vicariously liable for the acts of Randolph and of her co-worker that are found to be an assault and/or battery upon the plaintiff, or are otherwise found to have negligently or recklessly injured any of the plaintiffs physically, mentally, emotionally or otherwise, entitling the plaintiffs to an award of all allowable compensatory damages reasonably occasioned thereby, as well as an award of punitive damages to deter the defendant, its employees and others from committing similar wrongs in the future.

22. Randolph and/or her co-worker, while each on their employer's business at the plaintiff's residence, acted recklessly, and her conduct as described herein in the presence of the plaintiff and the Minor Plaintiffs, was so outrageous as to not be tolerated by civilized society. Her actions and

7

Case 2:13-cv-00004   Document 1   Filed 01/17/13   Page 7 of 12 PageID #: 7

misconduct resulted in serious and severe mental injury, emotional distress, pain and suffering not only to the plaintiff Hummel Hesson, but also to the young Minor Plaintiffs who were present and observed these wrongful and outrageous actions. The defendant, as employer of Randolph and her co-worker, is vicariously liable for all allowable compensatory damages reasonably occasioned by the wrongful and reckless actions of its employees, as well as an award of punitive damages to deter defendant, its employees and others from committing similar wrongs in the future.

23. Randolph and/or her co-worker, while each on their employer's business at the plaintiff's residence, intruded upon the solitude, seclusion, private affairs and concerns of each of these plaintiffs, and otherwise invaded their privacy causing injury and emotional distress. Such actions are and would be highly offensive to a reasonable person, such that the defendant, as employer of Randolph and her co-worker, is vicariously liable for all allowable compensatory damages reasonably occasioned by the wrongful and reckless actions of its employees in invading the privacy of each of the plaintiffs, as well as an award of punitive damages to deter defendant, its employees and others from committing similar wrongs in the future.

24. The defendant owed a duty of reasonable care to the plaintiffs to hire competent, qualified, and safe employees in general, and managers in particular. The defendant negligently and recklessly breached this duty by hiring an employee as manager who was incompetent, unfit, and dangerous. Defendant's failure to exercise reasonable care in its hiring of Randolph was a proximate cause of the injuries and loss suffered by the plaintiffs, entitling them to compensatory damages.

25. The defendant owed a duty to properly train and supervise the method and manner in which Randolph, as its manager, acted with regard to loan monitoring and collection to assure that it employed competent, qualified, and safe employees in general, and managers in particular in dealing with customers and in monitoring collateral. Specifically, the defendant had a duty to plaintiffs to supervise Randolph to insure the safety of these plaintiffs, to avoid the injuries to the plaintiffs

8

occasioned by Randolph and her co-worker as described above, and to assure compliance with all applicable laws relating to debts and debt collection practices. The defendant negligently and recklessly breached its duty of care owed to properly and adequately train and supervise Randolph in her manner of monitoring and otherwise dealing with customers and loan collateral in compliance with law. The failure of the defendant to exercise reasonable care in its training and supervision of Randolph was a proximate cause of the injuries and loss suffered by each of the plaintiffs, entitling them to all compensatory damages allowable under Tennessee and Federal law.

26. In addition and prior to this incident, the defendant was on actual or constructive notice that Randolph treated customers and employes in an aggressive and bullying manner, with rudeness, disdain and abuse, and in disregard of applicable laws, and that Randolph was otherwise negligent, careless, reckless and/or intentionally wrongful in her treatment of defendant's customers, including the plaintiff and her son and daughter-in-law. Despite this actual knowledge, the defendant took no, little or otherwise insufficient actions to control Randolph's actions and to remedy Randolph's misconduct, and so breached its duty owed to all of the plaintiffs to assure competent, qualified, and safe employees in general, and managers in particular in the manner of dealing with customers and loan collateral. This failure by the defendant in the training, supervision and oversight of its manager was negligent, evidenced a reckless and indifferent attitude towards the safety and well-being of the plaintiffs and others, and was a proximate cause of the injuries and loss suffered by each of the plaintiffs, entitling each of them to all compensatory damages allowable under Tennessee law.

27. The defendant acted negligently, recklessly, willfully, maliciously, intentionally, and/or with a conscious disregard for the safety of its customers including the plaintiff, and members of the general public, in its acts, errors and omissions in hiring, training and supervision as alleged above. Accordingly, an award of punitive and exemplary damages against the defendant is justified to deter defendant, its employees and others from committing similar wrongs in the future.

28.     The plaintiffs Samantha Hesson and William Hesson had to assume immediate and unanticipated responsibility for the care of their children for injuries suffered from this incident, and make claim for the medical and other expenses, monetary loss and the actual loss of service resulting from an injury to the minor children, as well as their loss of companionship and other damages allowable under Tennessee law including *Tenn. Code Ann. §20-1-105*.

29.     The defendant through its employees, and in efforts to secure collateral or to otherwise collect upon indebtedness owed, violated multiple provisions of the FDCPA, including but not limited to the following wrongful acts, entitling each of the plaintiffs to statutorily allowable damages, costs and attorneys fees in accordance with *15 U.S.C.A. § 1692*:

a.     Physically coming upon the premises at an unusual time, after dark without consent, which they knew or should have known was inconvenient to each of the plaintiffs as "consumers";

b.     Communicating with Hummel-Hesson, as a third party, with regard to the debt obligations of William Hesson, without consent;

c.     Continuing with debt collection efforts despite being told to terminate those communications by Hummel-Hesson;

d.     Engaging in conduct, the natural consequences of which is to harass, oppress and/or to abuse each of the plaintiffs as "consumers" and "persons" within the meaning of the Act, including but not limited to the use and threats of violence, and the use of obscene and profane language directed towards and/or in the presence of the plaintiffs;

e.     The use of unfair and unconscionable practices as means to collect, or to attempt to collect a debt; and

f.     Taking, and/or threatening to trespass and to take nonjudicial action to "check the collateral" or to otherwise dispossess the plaintiffs of their property and rights, without a properly perfected security interest or other present right to possession of such property.

10

Case 2:13-cv-00004   Document 1   Filed 01/17/13   Page 10 of 12 PageID #: 10

30. All such wrongful actions entitle each of the named plaintiffs, as "consumers" and/or "persons" within the meaning of the FDCPA, to recover all of their actual damages resulting from such violations, together with additional damages up to $1,000.00 per plaintiff, together with costs and attorneys fees as assessed by the court. *15 U.S.C. § 1692k.*

## IV.
## Prayer for Relief

WHEREFORE, premises considered, the plaintiffs respectfully pray:

1. That proper process issue and be served upon defendant, and that defendant be required to answer within the time period provided by law;

2. That each of the plaintiffs injured as alleged herein by the actions of the defendant be awarded a compensatory damage judgment and award against the defendant in the amount of Two Hundred Fifty Thousand ($250,000.00) Dollars, or such other, further or differing amount as a jury may award to make the plaintiffs whole;

3. That each of the plaintiffs, in addition, be awarded a punitive damage judgment and award against defendants in the amount of Five Hundred Thousand ($500,000.00) Dollars, or such other, further or differing amount as a jury may award, to the extent the jury finds that the defendant acted maliciously, intentionally, fraudulently or recklessly, such award being to punish defendant and to deter defendant, its employees and others from committing similar wrongs, misconduct and behavior in the future;

4. That Samantha and William Hesson, as parents of the Minor Plaintiffs, be awarded their allowable damages in accordance with *Tenn. Code Ann. §20-1-105* up to Twenty-Five Thousand ($25,000.00) Dollars each, or such other, further or additional amount as a jury may award based upon the proof introduced at trial;

5. That each of the plaintiffs be awarded all allowable damages under the FDCPA, *15 U.S.C. § 1692k;*

6. That the plaintiffs, in addition, be awarded their costs and fees, including attorneys' fees and costs, as the Court may deem appropriate and allowable under the facts and the Federal and State law of this case; and

7. For such other, further and general relief as the Court deems appropriate.

**8. A jury of eight (8) is demanded in this case.**

Respectfully Submitted.

_____
Kenneth S. Williams (#10678)
**Madewell, Jared, Halfacre, Williams & Wilson**
230 North Washington Avenue
Cookeville, Tennessee 38501
(931) 526 – 6101
*ksw@citlink.net*